Arguments not to exceed 15 minutes per side. Mr. Shadd for the appellant. Good morning, your honors. May it please the court, counsel. I'm here this morning representing Dwayne Gravely, who is a defendant in the court below. I'd like to reserve three minutes for rebuttal if I may. Thank you. There are numerous issues which I've raised in my brief and I'd just like to focus the court's attention on two of those this morning and leave the rest to the briefs that have been filed. The first issue I want to address is with regards to whether or not there should be a new trial based upon a Brady violation. And then the second issue I'd like to get into is the due process violation that occurred when the government pursued inconsistent prosecutions in this matter. Turning first to the Brady violation, I think after trial we found out that Mr. Woods had a less than illustrious past in front of the United States District Court in Nashville, Tennessee. This was found out very shortly after trial. Counsel for the appellee in this case sent a letter to Mr. Gravely who was acting pro se at the time and during the trial and that led to the new trial motion under Rule 33. I don't think there's any question but that this is Brady evidence. It is highly impeaching as to Mr. Woods. Therefore the question really comes down to one of prejudice in this case. What was the effect of not having this evidence at the time of trial and would it have made a difference in the trial in this case such that there should be a new trial in this case? And I think it's clear that Mr. Woods was a significant witness for the prosecution in this case. Mr. Woods was not only called as the last prisoner witness in their case in chief and was used to substantiate the theory for why Mr. Peterson was killed, but he was also called as the only rebuttal witness in this case. He was kind of the last thing that the jury heard before it went to final arguments and then deliberation. What did he Well, the significant thing that he testified to that no one else did was he testified that he had this discussion with Milburn. Milburn takes the stand for the defense. Milburn admits to committing the killing in this case and says that Gravely has nothing to do with it and had nothing to do with it. It is Mr. Woods that gets up on rebuttal and says that no, I had this discussion with and he admitted that he was just covering Mr. Gravely. He admitted that he was going to get some benefit out of it and therefore Mr. Milburn is a liar. Basically, that was what the jury heard was. We've got this witness that shows that Mr. Milburn is lying about Mr. Gravely not being involved in this. And it's significant because the defense case revolves around the guy that admits to killing Mr. Peterson saying, yes, I did it. Yes, I pled guilty to it. And no, Mr. Gravely had nothing to do with it. Then, of course, the weight of the rebuttal evidence in this case through Mr. Woods becomes highly significant in determining whether or not Mr. Milburn's telling the truth and whether or not Mr. Gravely's guilty of this offense. Of course, Gravely, according to other witnesses, had admitted to them that he was the one who instigated it. Right. But a lot of the other... The Manchester prison. There's no question that there are other witnesses that say that Gravely admitted to them. But a lot of those other witnesses had significant issues, which if you were sitting on the jury, you would have at least, if not only taken some of that other testimony with a grain of salt, but you could have omitted it altogether. It was Mr. Woods who was largely unimpeached. He was the one that was largely unimpeached out of the witnesses that the government called in this case. I mean, if you take... I think it's Mr. Daron Crawford, for instance, which is one of the first witnesses who was the one that was actually in the cell with Gravely and Milburn and Peterson. He admits to hearing voices. He admits to having these issues where he has significant issues with body fluids and gets written up for it. He is a completely unreliable witness. But if you take a look at Woods' testimony and you take a look at the cross-examination of Woods' testimony, he's the one that's largely unscathed. But had the defense had this evidence, not only would he have been unscathed, he would have been unworthy of any whatsoever by the jury. What was the issue? Was it false testimony down in Nashville, Tennessee before a grand jury? Yeah, it actually was. And I cited in my reply brief to... I found Mr. Woods actually had a couple of appeals through this court. And I cited in my reply brief to one of those appeals that kind of laid out in short detail some of the problems with Mr. Woods and I found his first case, or not his first case, but one of his cases from 2010. And if I could just read to the court, this is actually taken from the district court's findings as to Mr. Woods. And it starts out... That you're appealing from or the one in Tennessee? This is the one in Tennessee. This is Mr. Woods' case in Tennessee. So there was some sort of court in Nashville, Tennessee. And it says petitioner has appeared before this court on numerous occasions. And this court has found that the petitioner pervasively obstructs justice. Petitioner lied under oath to the grand jury and suborned perjury when he attempted to get two witnesses to lie at a sentencing hearing. Then it goes on to say in this 2010 case that not only did alter his face so that he couldn't be caught again, it's significant, significant impeachment of Mr. Woods' credibility. You prefaced all this by saying that this is clearly Brady evidence. Did you argue it before us as Brady evidence? I cited my first case as the case of United States versus Tavera, which is the I think most recent Brady case, at least at the time that I wrote the brief. I think there's been another one that's come out since then, maybe the Jefferson case. But that's... I don't say the word Brady, but I use the Brady standard and I use the Tavera case. And Tavera is really on point to what happens in this case. Because in the Tavera case, it's almost like this case in that there were witnesses that testified, at least one significant witness that testified against Tavera who said, yes, he was involved in the case. And then we have this other witness who flip-flopped. He said at one point he was not involved in the case. And exactly what is it, what exactly is the evidence that the government withheld and didn't provide here? That Mr. Woods perjured himself in United States District Court on at least two occasions. That information was certainly... When did that case you just read to us from come out? 2010, which would have been... It was actually September 2010 that this came out and the trial in this case was March and April of 2011. So that wasn't available? Wasn't available to Mr. Gravely. He was acting pro se and was incarcerated at the time. He did not have access to West or anything like that. And over and above that, Your Honor, the fact whether or not... Due diligence doesn't apply to withheld Brady evidence. And that's that Jefferson case that the court made in, I think it was like late 2013, early 2014, Jefferson versus United States. And that says that you don't apply a due diligence standard to defense counsel when it's knowing evidence that the government is withholding. And that is the essence of Brady. And that's also true through the Kyles v. Whitley case, which says that you can't impose that on a defense counsel when the government's withholding it. And in this case, there's no question that the government certainly had access to this information. They called Mr. Woods. They knew that Mr. Woods had a federal criminal conviction. There's no question about that. He was in federal prison at the time. What was his conviction for perjury in Tennessee? I think his conviction actually was for guns and drugs. And the perjury thing came up in his sentencing issue? Yeah, it came up in his sentencing hearing in 2003. At a court in 2003. Yep. And it actually came up, there was some, it may have came up even before that. Mr. Woods actually pled guilty in his case and received a life sentence. He was looking for a reduction in sentence and didn't receive the reduction in sentence at his sentencing due to the fact that he'd committed perjury in his case. Mr. Shedd, assuming that the court finds, as you've argued, that a Brady violation occurred with respect to Mr. Woods, just assuming, would that automatically warrant the granting of a new evidence in this case? And the number of witnesses who were put on, who testified that Mr. Gravely not only had knowledge but was involved, and given that the jury had an opportunity to hear both their direct examination, their direct testimony and their testimony on cross, even if we found a Brady violation in the face of this, would a new trial automatically be warranted? Well, I don't think it's automatically warranted, but it is warranted in this case when you take a look at the effect that this evidence would have had on the jury. And the reason that I say that is that there are, certainly there are other witnesses for the government in this case. Each one of them was beat up in cross-examination. We have a defendant that actually puts on a defense, and that defense is the person that committed the crime, who not only admits to the crime but exonerates the defendant in this case. And then it's the government that puts on the rebuttal in an attempt to destroy that defense, and the person that they use in the rebuttal is someone that they withhold information about that would have destroyed his credibility. So you need to look at it not simply just upon the fact, without weighing the evidence, because you need to look and see what effect this would have had on this jury in this case. And when you take a look at that, I think it's clear that this would have had a substantial effect on the jury in this case. And again, I don't remember the exact time frame in which the jury was out deliberating, but it was an insignificant period of time anyway, even without this evidence. With this evidence destroying Mr. Wood's credibility, it would have even resulted in a different verdict. Our submission has certainly warranted a new trial. I have 11 seconds for my second issue, so I think what I'm going to do is, unless the court has any questions about the due process and consistent prosecution issue, I'll just leave that to the brief. Thank you. Thank you, counsel. May it please the court. My name is Neeraj Gupta, and I represent the United States. I'd like to address three things that appellant addressed in their argument. First, this case did not hinge on, the government's case did not hinge on Woods. Second, Woods was not the only contradiction to what Milburn testified. And three, Woods was not unimpeached. First, the government's case did not hinge on Woods. This case is very similar to the Ferguson case from the Sixth Circuit in 2010 that we cited in our briefs. In Ferguson, the court held that, a defendant suffers prejudice from the withholding of favorable impeachment evidence when the prosecution's case hinges on the testimony of one witness. In Ferguson, the court noted that there were 12 government witnesses, six of whom testified to the same story. Mr. Gupta, I want to start by asking you, do you concede that the information withheld was, in fact, Brady material? It was Brady material. We concede the first prong of the analysis that this was material and impeaching information that should have been turned over, had the background. So in the briefs, the argument is whether the U.S. Attorney's Office in Tennessee counts as the government in this case, because it was in 2001 that the Middle District of Tennessee prosecuted Woods for this drug conviction and gave him life in prison. So they knew. And that's what the argument of the brief is, whether the U.S. Attorney's Office in Kentucky in 2011 knows what the Middle District of Tennessee knew in 2001. We would say that we did not know. I apologize. You know, the government doesn't call witnesses for trial that they don't know about. I mean, you know, they, whether it's Kentucky or whether it's Tennessee, they're going to check the database and if they fish somebody from prison, they're certainly going to check on them. So this argument seems to me a little bit specious that, I mean, it seems like you're dancing on the head of a pin. Whether the U.S. Attorney's Office knew what this office knows, that sounds a little bit disingenuous. Well, that's the opposite of intention, and I'm happy to discuss that issue in depth. The district court here made this decision based on the prejudice prong of the Brady analysis, and that's what we were going to argue today. But talking about possession prong, Kyles v. Whitley, this is cited in the brief, talks about what the prosecution team knows. The case Aguilar that appellant cites in their brief from the Ninth Circuit is instructive on what the prosecution team is. I could just very quickly go over the facts of that case. In that case, a district attorney's office in Los Angeles prosecuted Aguilar using a scent dog. The scent dog put the defendant at the scene of the crime. Six months earlier, the same district attorney used the same scent dog and the same officer who testified for the scent dog, and that evidence was thrown out for errors, and the court noted that two previous errors had been made with that scent dog. But isn't that different than talking about a defendant's Well, that's a distinction that I don't think came out in an appellant's argument. Here, Woods was not charged with perjury. Woods was charged and convicted to life in prison for drug crimes. This came out in his sentencing procedure. It came out in his sentencing hearing, which that transcript was available if somebody were to request it. That was a 2001 sentencing hearing. It was not in PACER. We looked. It was not in PACER. There is in the file in our office, there is an amended judgment that that sentencing judge made, which gives reference to this perjury before the grand jury, Woods committed perjury before the grand jury. So that is in the file. We don't know when that came into the file. We don't know if that was before 2011 when this case was tried. We don't know if it was part of the briefing in this appeal. We don't know if it was part of the briefing for the Rule 33 motion for a new trial. But the jury was treated to Woods' background. That's the third. Just not that specifically that he had lied to a grand jury. That's right. That's the third thing we wanted to talk about, that Woods was impeached in front of the jury. What was he impeached by besides his previous conviction? I have a list of six things. That he was requesting a Rule 35 motion in exchange for his testimony. That he was requesting witness protection in exchange for his testimony. That he'd been convicted of a drug crime. That he was sentenced to life in prison. And then gravely went on, on cross, Mr. Gravely talked about in cross and in closing, that Woods had conducted tobacco smuggling operations inside the prison and had stolen magazines from Mr. Gravely. So this was something that Mr. Gravely spent time in his closing impeaching Mr. Woods' credibility. This was not something that did not occur in the trial. Did Mr. Woods admit to all that or was this just argumentative? He admitted to it. I think all of that, everything except for the magazines and the tobacco, was brought out on direct by the prosecutors and he acknowledged that. And the tobacco and the magazine issues, I think Woods thought weren't important and admitted to them. A second thing, just going back to... Anybody else corroborate what he said about the other defendant there? That he was the one who told him he actually did it to cover up for Gravely? That was what I was going to get to next, which is that this is the second thing that I said I wanted to talk about. That Mr. Woods was not the only person who contradicted Mr. Melbourne's testimony. Like in the Ferguson case where there were 12 government witnesses, six of whom told the same story. Here there were 13 government witnesses, six of whom told the same story. Mr. Woods was one of those six. Mr. Crawford, the eyewitness inside the cell, the fourth inmate, he testified to what occurred. He testified to Melbourne and Gravely's involvement. And he was the one, for example, who helped Melbourne put the razor blade marks on his hand to construct this theory of self-defense. There were three other inmates, Player, Thomas, and Johnson, who Mr. Gravely also confessed or bragged about the crime to, and the cover-up. And then there was the pathologist, that's the sixth person, who testified that the body had been held down and beaten to death. Now, Mr. Gravely presented some witnesses on his own behalf, as I recall. That's right. Anybody who was able to really undermine the prosecution's theory here? Mr. Gravely put on nine witnesses, and a lot of his witnesses were about the videotape. What happened to the videotape? This was the videotape of the hallway outside the prison. And he, a lot of his, and then he also put on witnesses, he put on Mr. Melbourne, who took the blame. Mr. Melbourne was his only inmate, and he also, I'd have to look at the list. But he put on nine witnesses. Did Mr. Melbourne testify for the prosecution or just for defense? Mr. Melbourne testified only for the defense. So the jury had an array of witnesses whose testimony they could choose to believe or disbelieve, which would support Mr. Gravely's position or the government's position, and they came out and found Mr. Gravely guilty. Yes. Specifically for this one issue, there were six witnesses that testified to the same beating cover-up, the same beating and cover-up. The four people, the four inmates that Gravely confessed to, the eyewitness, Crawford, and the pathologist. Gravely didn't testify at all, did he? No, he didn't testify. He spoke at closing. Counsel, sure. That's a good way to get in things you're not going to testify about. Do you have any other questions for us? No, thank you. I do not. We do not. Thank you. If you have no other questions, we'll just rest on our brief. Thank you. Mr. Woods provided the reason for the killing. He testified that Mr. Peterson, there was this dispute between the Bloods and this DC car, and that Mr. Peterson had said, F the Bloods. That was the motivation, allegedly, for Gravely ordering Mr. Milburn to do the killing. That's significant. Also, during the rebuttal, Mr. Woods testified, and nobody else testified to this, that as Mr. Peterson lay dying, Mr. Milburn and Mr. Gravely stood over him laughing, watched his eyes roll back in his head, watched him stop breathing, and were just laughing about it. Then, when an officer came in and started crying, they laughed at that as well. That was some of the last evidence that the jury heard in this case, was what he said that Mr. Gravely admitted to him in this matter. Those were significant in this case. Again, I'm not going to say that the Eastern District of Kentucky U.S. Attorney's Office did not investigate Mr. Woods before putting him on the stand. They just knew that he had a conviction and decided not to look into it, even though it was a life sentence for guns and drugs, when he pled guilty. Again, he pled guilty and got a life sentence. I've been practicing federal law for a while now, and that rings a bell to me that there's something going on that's worthy of looking into. I appreciate your position, but going back to, you focused on the centrality of Mr. Woods' testimony to this conviction? Yes. This was a nine-day trial with a lot of witnesses, and Mr. Woods' testimony didn't occupy a disproportionate amount of time with this trial, did it? Well, if you're counting up the number of minutes, it's not a disproportionate amount. But he's the only person that testifies twice. He's the only person that testifies in rebuttal. He is the person that rebuts Mr. Milburn's testimony, who is, again, the main defense witness, who's the guy that admitted to the crime and exonerates the defendant in this case. But every time he got up to testify, he was subjected to fairly extensive cross-examination, was he not? No, he was not. He was exposed to cross-examination. However, Mr. Gravely had, at a minimum, one hand tied behind his back because he wasn't given this information. And the other cross-examination that the prosecutor talks about in this case is not significant cross-examination. The fact that he had a conviction, the fact that he was asking for Rule 35, those are in every cross-examination. Those don't strike hard blows. I see my time's up. Unless there's any other questions, we would ask that this be matter reversed. Thank you, counsel. Thank you. Case will be submitted.